EXHIBIT B

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

# ORIGINAL

1    STATE OF MINNESOTA                    DISTRICT COURT

2    COUNTY OF RAMSEY              SECOND JUDICIAL DISTRICT

3    ------------------------------------------------------

4    State of Minnesota,              )    **Pre-Trial**
                                      )
5                  Plaintiff,         )
                                      )    62-CR-22-4113
6    vs.                              )
                                      )
7    Christine Lynn Satriano,         ) October 18, 2022
                                      )    1:30 p.m.
8                  Defendant.         )
     ------------------------------------------------------

9         Transcript of the proceedings in the hearing held in

10   the above-entitled matter came on for hearing October 18,

11   2022, before the Honorable Edward Sheu, Judge of District

12   Court, at the Ramsey County Courthouse, 15 West Kellogg

13   Blvd, City of St. Paul, State of Minnesota.

14

15

16                    **A P P E A R A N C E S:**

17        ELIZABETH LAMIN, Assistant Ramsey County Attorney,

18   appeared for and on behalf of the State of Minnesota.

19        ROBERT CALDECOTT, Attorney at Law, appeared for and

20   on behalf of the Defendant.

21

22

23

24   COURT REPORTER: Emily Hutcheson, Court Reporter
                          Chambers 1450

25

Filed in District Court
State of Minnesota
2/2/2022 12:21 PM

```
 1                  P R O C E E D I N G S

 2              (WHEREUPON, the following proceedings were

 3       duly had:)

 4              THE COURT:  Let's call and go on the record

 5       with Line 8, State vs. Christine Lynn Satriano, file

 6       ending 22-4113.  Appearing for the State, please.

 7              MS. LAMIN:  Elizabeth Lamin, Assistant Ramsey

 8       County Attorney.

 9              THE COURT:  Thank you.  Good afternoon.  And

10       for the defense, please.

11              MR. CALDECOTT:  Good afternoon, Your Honor.

12       Robert Caldecott on behalf of the defendant, Ms.

13       Satriano, who's present today seated to my right.

14              THE COURT:  Thank you.  Good afternoon.  And,

15       Ms. Satriano, good afternoon.

16              THE DEFENDANT:  Good afternoon.

17              THE COURT:  Thank you and welcome.  We're

18       scheduled here today for a pretrial.  We had a hearing

19       last week.  We have the speedy trial and the trial

20       management conference set for November 3rd.  Mr.

21       Caldecott, any resolution today?

22              MR. CALDECOTT:  Yes, Your Honor.  I've had

23       some lengthy discussions with the State.  We have come

24       to a full resolution.

25              THE COURT:  Okay.  Would you summarize what
```

62-CR-22-4113

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

1      the agreement is?

2             MR. CALDECOTT:  Yes, Your Honor.  The

3      agreement would be my client would plead guilty to the

4      charge of aiding and abetting a felon.  She'd be given

5      a stay of imposition and be on probation for two

6      years.  She'd be sentenced to good time already served

7      plus an additional 30 days.  Any fine would be to the

8      discretion of the court at sentencing.  She would also

9      agree to testify to the principal offender whom she

10     was aiding and would have no further contact with the

11     said principal offender or any of his associates or

12     family.

13            My client would agree to stay in contact with

14     the county for purposes of potentially testifying

15     against the principal offender.  This case -- this

16     matter will be sentenced as a Level 7 felony.

17     Sentencing would occur after the principal offender

18     either pleads guilty or after his trial and I believe

19     that is everything.  And up to -- and up to one year

20     of additional time should my client violate her

21     probation or the terms of her conditional release.

22            THE COURT:  Okay.

23            MS. LAMIN:  Well -- let me just clarify.  So

24     this is a conditional plea, but if she doesn't fully

25     cooperate with the State and testify truthfully, or

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

```
 1      gets back into contact with the defendant, you know,

 2      she could face up to a year local time or the State

 3      could totally, you know, withdraw and we'd proceed to

 4      -- back to trial.

 5              MR. CALDECOTT:  That's my understanding as

 6      well.

 7              THE COURT:  Okay.  So let me just make sure

 8      I'm understanding.  Perhaps it's all written on

 9      paragraph 20 of the standard plea petition.  Guilty

10      plea to the sole charge in the complaint, a stay of

11      imposition of any sentence.  The presumptive sentence

12      is a -- is a Level 7 did you say, Mr. Caldecott?

13              MR. CALDECOTT:  I'm not sure if that's the

14      presumption or if that's just what the State's

15      agreeing to.

16              MS. LAMIN:  It's an unranked offense so we're

17      agreeing to rank it as a non-commit.

18              THE COURT:  Okay.  So stay of imposition,

19      probation for two years -- two years following

20      sentencing.

21              MR. CALDECOTT:  Yes, Your Honor.

22              THE COURT:  Time -- credit time served plus 30

23      more days, fines to the court at the time of

24      sentencing, no contact orders to remain in effect.  It

25      looks like there's three right now.  Those would stay
```

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

1    in effect until further notice.  Agreement to testify

2    against -- is it Mr. D.L.W.?

3         MS. LAMIN:  Yep.

4         MR. CALDECOTT:  Yes.

5         THE COURT:  -- truthfully and so forth, remain

6    law abiding, cooperate with any presentence interview,

7    come back to court for sentencing, which the parties

8    may want to do seven or eight months down the road.

9         MR. CALDECOTT:  Yep.  We have a potential date

10   of March 29th, 2023.  I've already spoken to the clerk

11   and the State and if necessary we may need a

12   continuance if the principal offender's trial has not

13   occurred yet.

14        THE COURT:  Okay.  And any violation of the

15   agreement, whether it's not remaining law abiding,

16   violating the no contact orders, not agreeing to

17   testify, could result in either an additional year of

18   workhouse time or the State withdrawing the offer and

19   calling the plea petition breached.

20        MS. LAMIN:  Correct.

21        MR. CALDECOTT:  Yes.

22        THE COURT:  Okay.  Ms. Satriano, did you hear

23   all of that?

24        THE DEFENDANT:  Yes.

25        THE COURT:  And you understood it all?

RAMSEY COUNTY DISTRICT COURT

62-CR-22-4113

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  Is that what you want to do?

 3              THE DEFENDANT:  Yeah.

 4              THE COURT:  Okay.  So we'll do a few things.

 5      I'll swear you in at this time, if you'll raise your

 6      right hand.

 7          (The defendant was duly sworn.)

 8              THE DEFENDANT:  I do.

 9              THE COURT:  You can lower your hand.  Please

10      state your full name.

11              THE DEFENDANT:  Christine Lynn Satriano.

12              THE COURT:  And your date of birth.

13              THE DEFENDANT:  1▇▇▇▇▇.

14              THE COURT:  And where were you born?

15              THE DEFENDANT:  Waupun, Wisconsin.

16              THE COURT:  Thank you.  And, Ms. Satriano,

17      have you had enough time with your attorney, Mr.

18      Caldecott and perhaps at some point Mr. Martine, to

19      discuss the charges?

20              THE DEFENDANT:  Yes.

21              THE COURT:  You fully understand what the

22      State's accused you of?

23              THE DEFENDANT:  Yes.

24              THE COURT:  How about your right to go to

25      trial.  Have you had enough time with your attorneys,
```

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

| 1 | including given the fact you've had a speedy trial |
| 2 | demand made.  Have you had enough time with your |
| 3 | attorneys to talk about your trial rights? |
| 4 | THE DEFENDANT:  Yes. |
| 5 | THE COURT:  Do you have any questions for me |
| 6 | about the charges, your trial rights, the consequences |
| 7 | of giving up your trial rights, or the terms of this |
| 8 | plea agreement? |
| 9 | THE DEFENDANT:  No. |
| 10 | THE COURT:  Okay.  So at this time I'll have |
| 11 | Mr. Caldecott go through that plea petition that's on |
| 12 | the table in front of you.  Please stop if you don't |
| 13 | understand or don't agree with anything, okay. |
| 14 | EXAMINATION |
| 15 | BY MR. CALDECOTT: |
| 16 | Q.   All right.  So, Ms. Satriano, I'm showing you what's |
| 17 | marked as "Petition to Enter a Plea of Guilty Pursuant |
| 18 | to Rule 15."  Have you reviewed this petition with me |
| 19 | previously? |
| 20 | A.   Yes, I have. |
| 21 | Q.   All right.  Now specifically you agree that your full |
| 22 | name is Christine Lynn Satriano born on |
| 23 | |
| 24 | A.   Yes. |
| 25 | Q.   All right.  And you understand that you are charged |

Filed in District Court
State of Minnesota
8/2/2022 12:21 PM

| 1 | | with aiding and abetting a felon after the fact here |
|---|---|---|
| 2 | | in Ramsey County? |
| 3 | A. | Yes. |
| 4 | Q. | And that occurred specifically in the City of St. Paul |
| 5 | | at the Ramsey County Law Enforcement Center? |
| 6 | A. | Yes. |
| 7 | Q. | And it's a bit fluid specifically what day you |
| 8 | | committed the offense, but do you agree it was |
| 9 | | approximately on or about July 1st, 2022? |
| 10 | A. | Yes. |
| 11 | Q. | Okay.  Now as part of entering a plea of guilty, Ms. |
| 12 | | Satriano, you're waiving a number of various rights, |
| 13 | | specifically your right to trial.  Do you understand |
| 14 | | that? |
| 15 | A. | Yes. |
| 16 | Q. | And you're also waiving your constitutional right to |
| 17 | | remain silent pursuant to the 5th Amendment? |
| 18 | A. | Yes. |
| 19 | Q. | You understand that at a trial you have the right to a |
| 20 | | presumption of innocence.  Do you understand that? |
| 21 | A. | Yes. |
| 22 | Q. | And at the trial you'd be presumed innocent until |
| 23 | | found guilty beyond a reasonable doubt by the jury. |
| 24 | | Do you understand that? |
| 25 | A. | Yes. |

62-CR-22-4113

Filed in District Court
State of Minnesota
9/2/2022 12:21 PM

```
 1   Q.   The jury would be a jury of 12 because this is a
 2        felony.  And they must, all 12, unanimously agree that
 3        you are guilty beyond a reasonable doubt.  Do you
 4        understand that?
 5   A.   Yes.
 6   Q.   And at the trial you understand you'd have the right
 7        to confront and cross examine witnesses called against
 8        you by the State?
 9   A.   Yes.
10   Q.   You also have the right to review any evidence brought
11        against you by the State?
12   A.   Yes.
13   Q.   You also have the right to compel witnesses to testify
14        on your behalf via subpoena.  Do you understand that?
15   A.   Yes.
16   Q.   Now with all that in mind do you choose to waive your
17        right to a trial in this matter?
18   A.   Yes.
19   Q.   All right.  Are you thinking clearly today, Ms.
20        Satriano?
21   A.   Yes.
22   Q.   I understand when we were filling out this plea
23        petition you did note that you had been treated
24        previously be a psychiatrist for a mental condition;
25        is that correct?
```

RAMSEY COUNTY DISTRICT COURT

Filed in District Court
State of Minnesota
10/2/2022 12:21 PM

```
 1   A.   Yes.

 2   Q.   However that was some time ago, more than 10 years

 3        ago?

 4   A.   Yes.

 5   Q.   All right.  You also noted that you have been taking

 6        some medications.  And I understand those are for anti

 7        -- for depression and anxiety; is that correct?

 8   A.   Correct.

 9   Q.   Do you believe those medications are in any way

 0        affecting your judgment today?

 1   A.   No.

 2   Q.   Okay.  And while it is true you have been held in

 3        jail, I believe for about 90 days now, do you agree

 4        that you are not entering this agreement simply to get

 5        out of jail, but you are in fact pleading guilty to

 6        the offense because you committed it?

 7   A.   Yes.

 8   Q.   Okay.  Have you had enough time to discuss this matter

 9        with me and review all the evidence with me?

20   A.   Yes.

21   Q.   All right.  And earlier you heard me read the gist of

22        the plea agreement to the judge on the record.  Were

23        you listening when I read that record?

24   A.   Yes.

25   Q.   All right.  And you agree with the terms of that
```

Filed in District Court
State of Minnesota
11 12/2/2022 12:21 PM

1       sentence that you're agreeing to?

2  A.   Yes.

3  Q.   All right.  Do you have any other further questions of

4       me at this time?

5  A.   No.

6  Q.   Do you wish to be bound by the plea agreement in this

7       document?

8  A.   Yes.

9  Q.   All right.

10           MR. CALDECOTT:  That's all I have, Your Honor.

11      I offer the petition.

12           THE COURT:  Thank you.  Ms. Lamin?

13           MS. LAMIN:  Thank you.  The State has no

14      objections to the Court's receipt of the petition.

15           THE COURT:  Thank you.  So, Ms. Satriano, your

16      attorney's just come up and handed me the 28

17      paragraph, two-sided document entitled "Petition to

18      Enter Plea of Guilty in Felony Case Pursuant to

19      Rule 15."  This was the document on the table just now

20      in front of you.  Is that your signature on the bottom

21      of the last page?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Do you have any questions for me

24      about the contents of this document?

25           THE DEFENDANT:  No.

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

1      THE COURT:  The essence of the plea agreement

2   includes the no contact with Mr. Williams or

3   associates.  Does everybody know who those are

4   sufficient for Ms. Satriano to abide by this?

5      MR. CALDECOTT:  Yes.  Specifically it would be

6   the codefendants of Mr. Williams' case and Mr.

7   Williams' family.  Forgive me, I ran out of room on

8   the petition so I couldn't fit all of that in there.

9      MS. LAMIN:  It would include his sister Shay

10  (phonetic) and his mom and other people of -- of his

11  family.

12     THE COURT:  Okay.  I ask only so that Ms.

13  Satriano knows the outside limits and specificity of

14  who she can and cannot contact under this agreement.

15  Staying in contact with the County Attorney's Office

16  means keeping your office, Ms. Lamin, apprised of

17  phone, contact, address?

18     MS. LAMIN:  Yes.  And we will be in contact

19  with her attorney.  And she should be on a conditional

20  release as well.

21     THE COURT:  Okay.  Understood.  I was going to

22  ask about if terms of release were discussed as either

23  part of this or separate to this.

24     MS. LAMIN:  Yeah.  After a month she can --

25  the State agrees that -- obviously it's up to Your

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

13

1    Honor, but we wouldn't object to a conditional release

2    for Ms. Satriano.

3         THE COURT:  Okay.  And 30 days means 30

4    calendar days or does it mean --

5         MS. LAMIN:  Yep.

6         THE COURT:  -- 20 days?

7         MS. LAMIN:  No.  30 days from today.

8         MR. CALDECOTT:  That's my understanding,

9    30 days from today, so the 17th of November.

10        THE COURT:  Okay.  All right.  So, Ms.

11   Satriano, we'll receive your petition.  I'll find that

12   you've made a knowing, voluntary, and intelligent

13   waiver of your trial rights and the rights that go

14   along with it.

15        I'll ask you now as to the sole count in the

16   complaint, this is aiding an offender accomplice after

17   the fact occurring on June 23rd, 2022, in St. Paul,

18   Ramsey County, Christine Lynn Satriano, how do you

19   plead, guilty or not guilty?

20        THE DEFENDANT:  Guilty.

21        THE COURT:  At this time you'll be asked some

22   questions about what happened.  Ms. Lamin, would you

23   do that questioning?

24        MS. LAMIN:  I will, Your Honor.  Thank you.

25

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

14

```
 1                      EXAMINATION

 2  BY MS. LAMIN:

 3  Q.   Ms. Satriano, between June 23rd of 2022 and July 20th

 4       of 2022, where were you working?

 5  A.   The Ramsey County Jail Medical Center.

 6  Q.   Okay.  And what position did you hold?

 7  A.   Medical assistant.

 8  Q.   Okay.  And how long had you worked there?

 9  A.   Between six and seven months.

10  Q.   And we're talking about the Ramsey County Jail that's

11       over on Grove Street in St. Paul, Ramsey County?

12  A.   Yes.

13  Q.   Okay.  What were your duties as part of that position?

14  A.   To distribute medications and help with patients in

15       the clinic.

16  Q.   During your work there, did you meet an individual by

17       the name of Delaquay Williams?

18  A.   Yes.

19  Q.   Okay.  And how did you meet him?

20  A.   Through medication pass.

21  Q.   Okay.  And did you begin having some sort of

22       relationship with him?

23  A.   Yes.

24  Q.   Okay.  And how -- how would you describe this

25       relationship?  Was it a typical relationship that you
```

62-CR-22-4113

Filed in District Court
State of Minnesota
15 12/2/2022 12:21 PM

```
 1        would have with an inmate?

 2   A.   No.

 3   Q.   What -- what happened during the course of this

 4        relationship?

 5   A.   More like an emotional affair I would call it.

 6   Q.   Okay.  An emotional affair.  And at some point during

 7        this relationship, did he ask you to get a different

 8        number?

 9   A.   Yes.

10   Q.   Okay.  Did you get that number?

11   A.   Yes.

12   Q.   Okay.  Now during the course of this relationship, did

13        he ask you to get a P.O. box?

14   A.   Yes.

15   Q.   Okay.  Did you get a P.O. box?

16   A.   No.

17   Q.   During the course of this relationship, how did you

18        two communicate?

19   A.   He would either pass me notes or -- or call me.

20   Q.   And when he called you, he was calling from the jail,

21        correct?

22   A.   Yes.

23   Q.   And so you knew that those calls were recorded?

24   A.   Yes.

25   Q.   Okay.  And he passed you notes.  Did you keep some of
```

62-CR-22-4113

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

16

```
 1        those notes?
 2   A.   Yes.
 3   Q.   Would you agree that this -- you said it's an
 4        emotional relationship, that there was kind of talk
 5        about you having -- did you feelings for him?
 6   A.   I guess with the emotional affair I would say there
 7        were some feelings, yes.
 8   Q.   Okay.  So at some point he asked you to -- first of
 9        all, you know why Mr. Williams was in jail, correct?
10   A.   Yes.
11   Q.   Okay.  Why was he in jail?
12   A.   Suspicion of murder is what I knew.
13   Q.   Say it again.
14   A.   Suspicion of murder is what I knew.
15   Q.   Suspicion of murder?
16   A.   He hadn't had his court case so I guess guilty -- or
17        not guilty until proven innocent.  Whatever.
18   Q.   He -- he was -- you knew he was in there for actually
19        two different murders, correct?
20   A.   I do now.  I don't know at the time that it was two.
21   Q.   Okay.  And he had in fact been indicted for first
22        degree premeditated murder, correct?
23   A.   I know that now, yes.
24   Q.   Well you had at one point even looked up his record,
25        correct?
```

62-CR-22-4113

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

17

```
 1   A.   In the medical unit, yes.

 2   Q.   Okay.  So you knew what the charges were, correct?

 3   A.   Yes.

 4   Q.   Okay.  And you'd looked up photos of him, correct?

 5   A.   Yes.

 6   Q.   Okay.  And so you agree that you knew he was charged

 7        with first degree premeditated murder?

 8   A.   Yes.

 9   Q.   Okay.  And so between June 22nd -- June 23rd, 2022 and

10        July 20th, 2022, at some point he had you start

11        reaching out to his sister, correct?

12   A.   She actually text -- sent the text message to me

13        first.

14   Q.   Okay.  And what was she saying in those -- in that

15        text message?

16   A.   Basically sending a message for him to me saying -- I

17        really honestly don't remember all the words, but I'm

18        sure you have it somewhere.  Contacted me to say hi.

19        And he said tell her I love her or something like that

20        and --

21   Q.   Okay.  We do have your text messages, correct?

22   A.   Yeah.

23   Q.   So she reached out to you and then you also reached

24        back out to her, correct?

25   A.   Yes.
```

RAMSEY COUNTY DISTRICT COURT

62-CR-22-4113

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

```
 1   Q.   Periodically, not just to say hi and share that you

 2        love her, but to even -- at some point to talk about

 3        things about his case, correct?

 4   A.   Yes.

 5   Q.   Okay.  And at one point, you put money on his books,

 6        correct?

 7   A.   Yes.

 8   Q.   How much did you put?

 9   A.   Probably a total of around 100 -- 120.

10   Q.   Okay.  And then at one point he asked you, right --

11        what did he tell you about the case, this first degree

12        premeditated murder case that he was in custody for?

13   A.   I honestly don't remember what he told me.  I know

14        that he said he knew this person.  He was being

15        accused of murdering or whatever, however he put it.

16        That he had picked him up in the car and that -- and

17        then the other stuff I found out is what I read.  I

18        don't remember what he told me though.

19   Q.   Okay.  So that's -- that's one of his murder cases.

20        The -- in another one of his murder cases, what did he

21        tell you about the murder case involving the

22        codefendants?

23   A.   I honestly don't remember.  I didn't know -- I don't

24        -- without looking at something, I don't remember.

25        You can certainly remind me and I can agree to it or
```

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

```
 1        not, but I don't remember.

 2   Q.   You two talked about it?

 3   A.   I -- I don't know which -- I didn't know we were

 4        talking about two different cases.  I don't know to

 5        tell you the truth.  I'm sure we did, but I don't know

 6        off the top of my head.

 7             MS. LAMIN:  Can we take a quick break?

 8             THE COURT:  Yes.  I think we could take a

 9        brief recess.  Let's go off the record.

10        (A brief break was taken.)

11             THE COURT:  Let's go back on the record at

12        this time.  Ms. Lamin, you may proceed.

13             MS. LAMIN:  Thank you.

14                  CONTINUED EXAMINATION

15   BY MS. LAMIN:

16   Q.   So, Ms. Satriano, what did Mr. Williams tell you about

17        the homicide?

18   A.   To the best of my recollection, he said he was there

19        but didn't -- didn't do anything really.  He said his

20        conscious was clear.

21   Q.   And did you know that -- was he there alone or with

22        other people?

23   A.   He said he was with other people.

24   Q.   Okay.  Who were the other people?

25   A.   His codefendants Pruitt and Davis.
```

Filed in District Court
State of Minnesota
2022/2/2022 12:21 PM

```
 1   Q.   Okay.  And speaking of the codefendants, at some point
 2        did he then ask you to reach out to them?
 3   A.   Yes.
 4   Q.   Okay.  What did he -- did he have you go talk to both
 5        of them?
 6   A.   Yes.
 7   Q.   Okay.  And what did he have you go tell Pruitt?
 8   A.   That Mr. Davis talked to investigators and talked is
 9        what he said, I believe.
10   Q.   Okay.  And what did he have you go tell Davis?
11   A.   What he told me was if you see him tell him I said
12        keep your head up because somebody might be talking.
13   Q.   Okay.  And that's to Pruitt?
14   A.   I'm sorry.  That was Davis.
15   Q.   Or was that to Davis?
16   A.   Davis.  Yeah.
17   Q.   Okay.  And did you go talk to Mr. Davis?
18   A.   Yeah.  I just told him that.
19   Q.   Okay.  Did you tell him to stop talking?
20   A.   To Davis, no.  I said that what he said was that
21        somebody was talking so tell him to keep his head up
22        at that point.
23   Q.   Who did Mr. Williams think was talking?
24   A.   At that particular time he didn't -- I didn't know.
25        After that then he said about Mr. Davis.
```

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

21

```
 1   Q.   So initially he had you go talk to Montez Davis and

 2        tell him to keep his head up?

 3   A.   Correct.

 4   Q.   Then he had you go talk to Montez Davis again?

 5   A.   No.  That was all in one thing.  I talked to Mr.

 6        Pruitt after that.

 7   Q.   Okay.  And what did you tell Mr. Pruitt?

 8   A.   He -- Mr. Williams told me to tell him that Mr. Davis

 9        was talking and how did he want to proceed.

10   Q.   And how did who want to proceed?  How did Pruitt want

11        to proceed?

12   A.   Correct.  Yeah.

13   Q.   And, again, those are his codefendants in the first

14        degree premeditated murder homicide, correct?

15   A.   Correct.

16   Q.   Okay.  And you were using your position as a nurse's

17        aid in the jail to go communicate these messages to

18        the codefendants, correct?

19   A.   Correct.

20   Q.   In addition you also were sharing this information

21        with Williams' sister and his family, correct?

22   A.   Correct.

23   Q.   In addition you were getting information not just from

24        Williams, but just from your position and sharing it

25        with Williams' sister, correct?
```

```
 1   A.    Correct.  To the best of my recollection.

 2   Q.    Well we have an email -- a text message you sent to

 3         his sister, correct?

 4   A.    Yes.

 5   Q.    And in that text message you said you just overheard

 6         them call for an investigator interview, correct?

 7   A.    Yes.

 8   Q.    And that, "I also overheard the guy was telling you

 9         about talking about some kind of deal he's getting"?

10   A.    Yes.

11   Q.    "And so D better play the fool and say this is what

12         this guy does every time he gets a charge and to look

13         at his history and forget everything else and tell

14         them the story about how they did this," correct?

15   A.    Yes.

16   Q.    I mean, this is from your cell phone that we got and

17         searched, correct?

18   A.    Okay.

19   Q.    And this is the text message that you sent to Mr.

20         Williams' sister?

21   A.    Yes.

22   Q.    Okay.  And so what you're doing is you are -- you

23         agree by -- by claiming that somebody's a snitch and

24         talking, right, that you were interfering in a first

25         degree murder prosecution?
```

62-CR-22-4113

Filed in District Court
State of Minnesota
2/2/2022 12:21 PM

```
1    A.    Yes.

2    Q.    You agree that this is not just any first degree

3          murder prosecution, this is a gang-related retaliatory

4          killing?

5    A.    I agree, yes.

6    Q.    And that calling people snitches and trying to tell

7          when investigators are going in or someone is coming,

8          that that would significantly impede our ability to

9          prosecute this case?

10   A.    Yes.

11   Q.    And you agree by this conduct that you were

12         obstructing the prosecution of this crime?

13   A.    Yes.

14   Q.    And you agree that you did this with intent to try to

15         help Mr. Williams?

16   A.    Yes.

17   Q.    And, in fact, in some of your letters and phone calls

18         you said you would do anything for him, correct?

19   A.    Yes.

20   Q.    And you were even going to go -- were you going to go

21         talk to his lawyer or try to help him get lawyers,

22         correct?

23   A.    No.   That is not correct.   I believe that what you're

24         talking about was looking at the Freedom Fund.

25   Q.    Oh.   Okay.   But you were going to do anything you
```

62-CR-22-4113

Filed in District Court
State of Minnesota
24 12/2/2022 12:21 PM

```
 1         could to try to help Mr. Williams get out of jail?

 2    A.   I said that, yes.

 3    Q.   Okay.  And so when Mr. Williams talked about this

 4         homicide that he said Mr. Pruitt and Mr. Davis were

 5         at, that he said he was there?

 6    A.   Yes.

 7    Q.   Okay.  And Mr. Williams asked you to let people know,

 8         including his sister and other people, that someone

 9         was talking about their case, correct?

10    A.   Yes.

11    Q.   And that when Mr. Williams was referring to "little

12         boy, little bro," that was Kendall Pruitt, correct?

13    A.   Yes.

14    Q.   And you knew who these people were?

15    A.   Yes.

16    Q.   Okay.  And I think when you spoke to Montez Davis,

17         didn't you tell him that, "your boy wants me to tell

18         you that people are talking here and you shouldn't say

19         anything to anyone," correct?

20    A.   I said -- I didn't say the last part of it that I

21         recall.  I said the keep your head up.

22    Q.   So what did you tell Montez Davis?

23    A.   That -- I'm sorry.  That somebody was talking and he

24         shouldn't talk anymore or something.  I'm sorry.  I

25         don't remember.
```

62-CR-22-4113

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

| | | |
|---|---|---|
| 1 | Q. | And you agree that going and talking to codefendants, |
| 2 | | telling them not to talk, naming people as possible |
| 3 | | snitches, putting that out there to Mr. Williams' |
| 4 | | sister, also letting him know if an investigator was |
| 5 | | talking to them, would significantly obstruct criminal |
| 6 | | prosecution? |
| 7 | A. | Yes. |
| 8 | Q. | And you've had enough time to talk to your attorney? |
| 9 | A. | Yes. |
| 10 | Q. | You feel that he's done a good job representing you? |
| 11 | A. | Yes. |
| 12 | Q. | You're pleading guilty today because you are guilty? |
| 13 | A. | Yes. |
| 14 | Q. | You understand this a conditional plea, that you have |
| 15 | | to cooperate with the State? |
| 16 | A. | Yes. |
| 17 | Q. | Okay.  And that you have to testify truthfully? |
| 18 | A. | Yes. |
| 19 | Q. | Do you want the Judge to accept your plea? |
| 20 | A. | Yes. |
| 21 | | MS. LAMIN:  Your Honor, is that a sufficient |
| 22 | | factual basis? |
| 23 | | THE COURT:  Ms. Satriano, I want to make sure |
| 24 | | no one's putting words in your mouth.  In your own |
| 25 | | words, what did you do that helped Mr. Williams |

RAMSEY COUNTY DISTRICT COURT

```
 1      obstruct the investigation into his murder cases.

 2               THE DEFENDANT:  Passing conversations in

 3      between people.

 4               THE COURT:  As described in further detail by

 5      Ms. Lamin's questions?

 6               THE DEFENDANT:  Yes.

 7               THE COURT:  Okay.  I do find that's an

 8      accurate, voluntary, and intelligent guilty plea.  Ms.

 9      Lamin, going back to the agreement for a moment, is

10      the kind of testimony you just heard consistent with

11      what you'd expect this part of the plea agreement,

12      would that be satisfactory if that were used at trial

13      one day?

14               MS. LAMIN:  Yes, Your Honor.

15               THE COURT:  Okay.  Sounds good.  So, Ms.

16      Satriano, what we'll do is a few things.  I understand

17      there's a request for a conditional release 30 days

18      from today, Mr. Caldecott, that Ms. Lamin doesn't

19      object to?

20               MR. CALDECOTT:  That's my understanding, Your

21      Honor, yes.

22               THE COURT:  Okay.  So what we can do is we can

23      make a note on our calendar for that conditional

24      release to be issued November 17th, which is 30 days

25      from today.  At that time you can be released on the
```

62-CR-22-4113

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

27

1     conditions to stay in touch with Justice Point, our

2     pretrial supervision agent.  Don't pick up any new

3     charges, abide by the no contact orders that are in

4     effect, abide by the terms of this plea agreement,

5     which includes not contacting various other people,

6     cooperating with the presentence interview.  You'll

7     get the phone number to call to set up that interview.

8     We picked a sentencing date of March 29th, 2023, Mr.

9     Caldecott?

10         MR. CALDECOTT:  Yes.  That is more or less a

11    placeholder and -- because of the nature of the

12    underlying principal offender's trial if it needs to

13    be continued -- but for the moment, we'll stick with

14    that date.

15         THE COURT:  Okay.  So keep that date in mind.

16    Your attorney and the prosecutor will be in touch if

17    it needs to be postponed for some reason.  Anything

18    further, Ms. Lamin, to do today on the record?

19         MS. LAMIN:  No.  Just that we're clear that

20    this is a conditional plea.  She has to remain in

21    contact, remain law abiding.

22         THE COURT:  Okay.  And, Ms. Satriano, just to

23    repeat, you understand you've got to abide by the

24    terms of the plea agreement to get the benefit of it?

25         THE DEFENDANT:  Yes.

62-CR-22-4113

Filed in District Court
State of Minnesota
2/2/2022 12:21 PM

1          THE COURT:  If you were not to do so for any

2     reason, the State could pull that plea agreement.

3     We'd be right back here.  You understand?

4          THE DEFENDANT:  Yes, I understand.

5          THE COURT:  Okay.  Mr. Caldecott, anything

6     further for the record?

7          MR. CALDECOTT:  Yes.  Actually one small

8     issue.  So my client is being held down in the Dakota

9     County Jail.  I presume the Court will be able to know

10    how to notify them to release her around the 17th when

11    that time comes.

12         THE COURT:  We'll figure that out.  I assume

13    it's through some form of reciprocity under the

14    circumstances.  So we'll sort that out so that Ms.

15    Satriano is promptly released hopefully on

16    November 17th.

17         MR. CALDECOTT:  Thank you.

18         THE COURT:  Ms. Satriano, any questions for me

19    about anything that's happened today or anything

20    that's expected of you over the next several months?

21         THE DEFENDANT:  No.

22         THE COURT:  Okay.  Well thank you for coming

23    forward to resolve this.  We'll get this wrapped up

24    eventually at sentencing.  We'll stand adjourned.

25         (The hearing was concluded at 4:04 p.m.)

Filed in District Court
State of Minnesota
12/2/2022 12:21 PM

1                     **REPORTER'S CERTIFICATE**

2

3

4            I, Emily Hutcheson, Official Court Reporter,

5    Second Judicial District, County of Ramsey, State of

6    Minnesota, do hereby certify that the foregoing pages

7    of typewritten material constitutes a true and

8    accurate record taken by me of the proceedings had in

9    the matter of *State of Minnesota vs. Christine Lynn*

10   *Satriano* at the time and place stated herein.

11

12

13

14   DATED:   December 2, 2022

15

16

17

18               *Emily Hutcheson*

19               Emily Hutcheson
                  Official Court Reporter

20               15 West Kellogg Boulevard
                  Chambers 1450

21               St. Paul, MN 55102
                  (651)266-9214

22

23

24

25